John C. Rothermich, OSB #071685
Email: John.Rothermich@klgates.com
K&L GATES LLP
One SW Columbia Street, Suite 1900
Portland, OR 97204
Tel.: (503) 228-3200\Fax: (503) 248-9085

Beth W. Petronio, *pro hac forthcoming*
Email: beth.petronio@klgates.com
K&L GATES LLP
1717 Main Street, Suite 2800
Dallas, TX 75201
Tel.: (214) 939-5815/Fax: (214) 939-5849

*Attorneys for Plaintiff Tyler Technologies, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| TYLER TECHNOLOGIES, INC., a Delaware Corporation,<br><br>                                    Plaintiff,<br>    v.<br><br>MULTNOMAH COUNTY, OREGON,<br><br>                                    Defendant. | Case No.<br><br>COMPLAINT<br><br>(Declaratory Judgment; Quantum Meruit, Specific Performance, Declaratory Judgment)<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Tyler Technologies, Inc. ("Tyler") files this Original Complaint against Defendant Multnomah County, Oregon ("Multnomah"). In support of its claims herein, Tyler respectfully alleges the following:

PAGE 1 – COMPLAINT

## I. PARTIES

1. Tyler is a Delaware corporation that maintains a principal place of business at 5101 Tennyson Parkway, Plano, Texas 75024.

2. Defendant Multnomah is a political subdivision of the State of Oregon. Multnomah may be served with process by serving Jenny M. Madkour, County Attorney, at 501 S.E. Hawthorn Blvd., Portland, Oregon 97214.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Tyler and Multnomah are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) & (2). Multnomah is located in this District and a substantial part of the events or omissions giving rise to Tyler's claims occurred in this District.

## III. FACTUAL BACKGROUND

5. Tyler is the largest software company in the nation that focuses solely on providing integrated software and technology services to the public sector. Tyler has more than 26,000 successful installations across more than 10,000 sites, with clients in all 50 states, Canada, the Caribbean, Australia, and other international locations. Tyler's Courts & Justice Division offers a variety of software solutions as part of its Odyssey product suite. Tyler's Odyssey solutions are implemented in more than 600 jurisdictions, and offer robust case management solutions for judges, clerks, attorneys, and other members of the justice community.

6. Tyler's software solutions, including Odyssey, are "commercial off-the-shelf" or "COTS" products. Instead of building an entirely custom software solution for each client, Tyler

PAGE 2 – COMPLAINT

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97204
TELEPHONE: (503) 228-3200

licenses a replicable core solution that can be adjusted on a client-by-client basis using built-in configurations. Once a client "goes live" on the software, the client transitions to a Tyler support team for ongoing maintenance and help desk services. Post go-live, as part of a process known as "continuous improvement," Tyler often continues working with its clients to implement additional features and functionality that may not have been included within the scope of the original go-live. And, as part of the ongoing maintenance, Tyler provides regular updates to the software, allowing Tyler to make improvements and upgrades available to all clients that are live on a specific software solution. Tyler's COTS products are particularly attractive options to governmental entities because they provide high-quality software solutions at a much more economical price than fully customized solutions.

7. On August 11, 2016, Tyler and Multnomah entered into a Master Agreement #4400002300 (together with the relevant ancillary documents, including the Statement of Work, Investment Summary, and Amendments referenced below, the "Agreement"), whereby Tyler agreed to provide certain software and services to Multnomah in order to implement Tyler's Odyssey Attorney Manager solution ("Odyssey") for the Multnomah County District Attorney ("MCDA"). MCDA was replacing its existing prosecutorial record management system that had been in place since 2002 because that technology had become obsolete.

8. The Agreement provided for Tyler to license Odyssey to Multnomah and to provide certain professional services required to implement that software. The specifics of those professional services are detailed in a Statement of Work ("SOW") attached to the Agreement as Exhibit C. The SOW divided the implementation into four "Phases" and itemized and identified the specific "Deliverables" that Tyler was to provide pursuant to the Agreement. The SOW further outlined each party's unique responsibilities during a given phase. In addition, the

PAGE 3 – COMPLAINT

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97204
TELEPHONE: (503) 228-3200

Agreement included a Maintenance and Support Services Agreement that governed the parties' post-go-live obligations, including Tyler's ongoing maintenance and support services.

9.  Multnomah's payment obligations are outlined in an Investment Summary attached to the Agreement as Schedule 1. The Agreement requires Multnomah to pay for a total of $248,980 in licensing fees for the software and an initial annual maintenance fee of $52,286. It also requires Multnomah to pay for 8,088 hours of professional services at a cost of $1,321,267. Those services constitute the scope of the project and were quoted as a "not-to-exceed" cost. *See* Agreement at Section 5.1. The professional services fees are "payable based on completion and Acceptance of the" specified Deliverables. For example, Deliverable 1.1.1 is the "Project Management Plan." Upon completion and Acceptance of that Deliverable, Multnomah is required to pay $24,000 to Tyler.

10.  The SOW further provides that, "[w]ith respect to delivery and acceptance of the deliverables included in this SOW, the parties will follow the procedures and processes set forth in the [SOW]." Agreement Exhibit C, SOW at 2. In addition to payment for each Deliverable being owed upon completion and Acceptance of a specific Deliverable, Section 7.3 of the Agreement also provides that:

> Upon completion of each of the identified Phases in the SOW, [Multnomah] shall have the period specified within the SOW in which to inspect the work completed by Tyler and notify Tyler of work that is not accepted, based upon a deviation from the specifications agreed upon and documented in the deliverables of Phase 1 of the SOW. **If written notice of any work that is not accepted is not provided within the specified period, all work under the Phase shall be deemed accepted.**

11.  The Investment Summary also provides for specific discounted rates in the event Multnomah opts to request additional professional services beyond the scope of those outlined in

PAGE 4 – COMPLAINT

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97204
TELEPHONE: (503) 228-3200

the initial agreement.

12. As part of the Agreement, Multnomah contractually acknowledged "that the implementation of the Project is a cooperative process requiring the time and resources of [Multnomah] and Tyler personnel." Agreement at Section 5.4. Moreover, both parties "shall, and shall cause its personnel to, use all reasonable efforts to cooperate with and assist the other Party as may be reasonably required to timely implement the Project[.]" *Id.* Multnomah's responsibilities also included providing all training for its personnel; collecting, preparing and entering all data necessary for the daily operation of the software; providing the networks required to run the software; staffing an internal help desk function; and, prior to go-live, installing all updates and changes to the software that Tyler made available. *See id.* at Section 9.2.

13. The SOW provided further details of Multnomah's responsibilities, including timely and responsible decision-making, "from strategic-level decisions to smaller, detailed configuration decisions." Agreement Exhibit C, SOW at 3. Multnomah was supposed to designate "Subject Matter Experts" to make decisions on behalf of their business areas, as well as a Project Manager to, for example, coordinate the participation of the Multnomah Subject Matter Experts, coordinate the review and approval Tyler deliverables, and communicate the project status to the Multnomah team. *See id.*

14. Less than a year into the implementation, Multnomah began expanding the scope of the project. In Tyler's experience with implementations of this nature, it is not uncommon for clients like Multnomah to want the new system to mimic the functionality of its legacy system, as the end users struggle through their internal change management process. However, because Odyssey is a COTS product, the ability to adjust functionality without costly and time-

PAGE 5 – COMPLAINT

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97204
TELEPHONE: (503) 228-3200

consuming custom development is limited. Tyler encouraged Multnomah to adhere to the original scope of the project, warning that efforts to significantly customize the software would add major costs and delay the project. Multnomah, however, had changed leadership since the original Agreement was executed, and new leadership insisted on expanding the project's scope to try to accommodate the end user's unique demands. All told, Multnomah almost doubled custom development work, moving away from the COTS solution it had contracted for in order to substitute custom functionality in an effort to replicate many of the nuances of its legacy system in the Odyssey installation.

15.     Tyler tried to accommodate Multnomah as best it could. The expansions were memorialized in multiple amendments and parallel agreements to the Agreement. For example, on January 1, 2018, the parties executed Amendment No. Three, which increased the total hours of professional services by 1920 hours and the total cost of implementation services by $288,000. Amendment No. Three also contained modified acceptance criteria specific to the services provided pursuant that that Amendment.

16.     On May 4, 2018, the parties executed Amendment Four, which further increased the number of hours by 350 and the total cost by $52,500. On July 30, 2018, Tyler and Multnomah entered into a Professional Services Agreement adding 479 hours and $71,850 of development costs for additional services related to the Agreement. A second Professional Service Agreement was executed on January 18, 2019, which added an additional 76 hours and $11,400 of cost to the implementation.

17.     While the scope of the project was significantly expanding, Multnomah was also asserting that it had internal resource issues that prevented it from completing Multnomah's portions of the implementation. In an effort to keep the implementation on track, Tyler agreed to

PAGE 6 – COMPLAINT

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97204
TELEPHONE: (503) 228-3200

take on additional responsibilities beyond the scope of those identified in the SOW without the need for additional compensation.

18. In April 2018, Tyler delivered the core (non-custom) Odyssey solution and put that core solution through user acceptance testing, also referred to by the parties as "solution validation." There was an aggregate pass rate of 90% on all tested processes. Tyler addressed each of the issues that arose, while also continuing to accommodate significant changes in scope and address other project challenges.

19. In November 2018, Tyler and Multnomah met in an effort to streamline the project's scope and re-align the parties' efforts towards a successful go-live. Tyler agreed once again to take on additional work that had previously been Multnomah's responsibility. As a result of the meeting, Tyler continued to perform services above and beyond those set forth in the Agreement, driving towards another round of "solution delivery" to satisfy Multnomah's requests for additional testing.

20. On March 27, 2019, Tyler's project team met with Multnomah's team, including the Interim Chief Information Officer Bob Leek. A follow-up meeting occurred on March 28, 2019, with Mr. Leek and Tyler's project leadership. Minutes from that meeting contemporaneously shared between both parties indicate that Mr. Leek confirmed acceptance of solution delivery at that meeting and indicated a willingness to move to user acceptance testing, or "solution validation."

21. In accordance with Mr. Leek's acceptance, on March 29, 2019, Tyler invoiced Multnomah for Deliverables completed and accepted as of that date and began to prepare for the final steps in the project.

PAGE 7 – COMPLAINT

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97204
TELEPHONE: (503) 228-3200

22. On April 3, 2019, Multnomah provided Tyler with a letter vaguely alleging that Tyler had breached the Agreement and purporting to "formally notif[y] Tyler that it does not accept any of the deliverables under Phases 2.2.2, 2.3.1, 2.3.2, 3.4.2 or REQs 2041, 2044, 2173, 2290, 2595, or 2788." Multnomah's stated rationale for refusing to accept such Deliverables was that they "were not complete." In so doing, Multnomah took the position, contrary to the express terms of the Agreement, that payment for a Deliverable is not due until the product is deployed, tested and validated as a "functioning integrated solution," a standard not set forth in the Agreement. Indeed, Multnomah confused the concept of "Final Acceptance" in the Agreement with that of completion and acceptance of a specific Deliverable. There is a significant distinction between the delivery of a fully-functioning, integrated solution and that of specific parts and pieces of such a solution. The Agreement expressly provides for payment of each part and piece along the way, not for payment only at the completion of the project.

23. In response to Multnomah's April 3, 2019 letter, Tyler adamantly denied the suggestion that it was in breach of the Agreement and suggested that the parties proceed with the dispute resolution mechanisms outlined the Agreement. On May 9, 2019, the parties held a joint meeting in Portland subject to the dispute resolution provisions in the Agreement.

24. For the next few months, the parties attempted to negotiate an amendment to the Agreement. A meeting to finalize the amendment was set for July 26, 2019. On July 23, 2019, Multnomah abruptly rejected the amendment and indicated that it did not want to complete the project. Work on the implementation ceased at Multnomah's request. Tyler made repeated attempts to offer alternative paths towards re-engagement. Although Multnomah would initially express a willingness to entertain those paths, Multnomah ultimately rejected each of Tyler's attempts.

PAGE 8 – COMPLAINT

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97204
TELEPHONE: (503) 228-3200

25. Multnomah owes, but refuses to pay, Tyler for invoices related to numerous Deliverables that have been completed and accepted:

| | |
|---|---|
| REQ-2595 | $9,000 |
| REQ-2788 | $11,400 |
| Deliverable 2.2.2 | $260,000 |
| Deliverable 2.3.1 | $155,000 |
| Deliverable 2.3.2 | $417,920 |
| REQ-2041 | $9,600 |
| REQ-2044 | $8,400 |
| REQ-2173 | $34,500 |
| REQ-2290 | $6,000 |
| Deliverable 3.4.2 | $166,500 |
| **TOTAL** | **$1,078,320** |

26. Thus, Tyler has performed services totaling at least $1,078,320 in value for Multnomah that have not yet been paid and for which Multnomah is unreasonably withholding payment in breach of the Agreement.

## VI.  CAUSES OF ACTION

### COUNT I. - BREACH OF CONTRACT

27. Tyler re-alleges and incorporates the allegations in all previous paragraphs as if expressly set forth herein.

28. Tyler and Multnomah entered into a valid and binding contract as described herein and as evidenced by the Agreement signed by the parties, including the SOW and other

PAGE 9 – COMPLAINT

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97204
TELEPHONE: (503) 228-3200

relevant ancillary documents.

29. At all relevant times, Tyler has been willing and able to perform its obligations under the Agreement. Multnomah has repudiated its obligations under the Agreement, and, despite repeated requests, Multnomah has failed to pay invoices properly issued for Deliverables that were completed and accepted.

30. Multnomah's breach of the Agreement has directly and proximately caused damage to Tyler in excess of the minimum jurisdictional limits of this Court.

## COUNT II. – SPECIFIC PERFORMANCE

31. Tyler re-alleges and incorporates the allegations in all previous paragraphs as if expressly set forth herein.

32. Tyler and Multnomah entered into a valid and binding contract as described herein and as evidenced by the Agreement signed by the parties, including the SOW and other relevant ancillary documents.

33. At all relevant times, Tyler has been willing and able to perform its obligations under the Agreement. Multnomah has repudiated its obligations under the Agreement, and, despite repeated requests, Multnomah has failed to pay invoices properly issued for Deliverables that were completed and accepted.

34. Tyler seeks an order of specific performance requiring Multnomah to pay invoices properly issued for Deliverables that were completed and accepted and otherwise perform its obligations pursuant to the Agreement.

## COUNT III. – QUANTUM MERUIT

35. Tyler re-alleges and incorporates the allegations in all previous paragraphs as if expressly set forth herein.

PAGE 10 – COMPLAINT

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97204
TELEPHONE: (503) 228-3200

36. Tyler conferred a significant benefit on Multnomah by providing over $1 million of implementation services to Multnomah. Multnomah was aware that it was receiving the benefit and that the services had value. Multnomah was aware that Tyler expected to be paid for the services. Under the circumstances, it would be unjust to allow Multnomah to retain the benefit of those services without making payment to Tyler.

37. Multnomah's failure to pay for such Deliverables and services has directly and proximately caused damage to Tyler in excess of the minimum jurisdictional limits of this Court.

## COUNT IV. – DECLARATORY JUDGMENT

38. Tyler re-alleges and incorporates the allegations in all previous paragraphs as if expressly set forth herein.

39. Pursuant to 28 U.S.C. § 2201, Tyler seeks a declaratory judgment from this Court that Tyler's actions have been consistent with the obligations imposed pursuant to the Agreement, and that Tyler has not breached the Agreement;

## PRAYER FOR RELIEF

**WHEREFORE,** Tyler requests that this Court grant it judgment against Multnomah and award to Tyler:

(i). Tyler's economic, actual and consequential damages in excess of the minimum jurisdictional limits of this Court;

(ii) a declaratory judgment that Tyler's actions have been consistent with the obligations imposed pursuant to the Agreement and that Tyler has not breached the Agreement;

(ii). pre-judgment interest as may be provided by law;

PAGE 11 – COMPLAINT

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97204
TELEPHONE: (503) 228-3200

 (iii). necessary and reasonable attorneys' fees and costs of court through trial and appeal of this action;

 (iv). post-judgment interest at the highest lawful rate from the date of judgment until such judgment is satisfied; and

 (v). such other and further relief to which Tyler may be entitled.

Dated: July 6, 2020   Respectfully submitted:

    **K&L GATES, LLP**

    By: */s/ John C. Rothermich*
    John C. Rothermich, OSB #071685
    Email: John.Rothermich@klgates.com
    K&L GATES LLP
    One SW Columbia Street, Suite 1900
    Portland, OR 97204
    Tel.: (503) 228-3200\Fax: (503) 248-9085

    Beth W. Petronio, *pro hac forthcoming*
    Email: beth.petronio@klgates.com
    K&L GATES LLP
    1717 Main Street, Suite 2800
    Dallas, TX 75201
    Tel.: (214) 939-5815/Fax: (214) 939-5849

    **ATTORNEYS FOR**
    **TYLER TECHNOLOGIES, INC.**

PAGE 12 – COMPLAINT

K&L GATES LLP
ONE SW COLUMBIA STREET
SUITE 1900
PORTLAND, OR 97204
TELEPHONE: (503) 228-3200